# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: March 20, 2008
NOT TO BE PUBLISHED

# Supreme Court of Kentucky



2007-SC-000233-WC

CZAR COAL CORPORATION                                           APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                        2006-CA-001415-WC
WORKERS' COMPENSATION NO. 03-95660

MARSHALL JARRELL;
HON. GRANT ROARK,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD

                                                               APPELLEES

**AND**

2007-SC-000234-WC

MARSHALL JARRELL                                               APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                        2006-CA-001415-WC
WORKERS' COMPENSATION NO. 03-95660

CZAR COAL CORPORATION;
HON. GRANT ROARK,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD                                APPELLEES

**MEMORANDUM OPINION OF THE COURT**

An Administrative Law Judge (ALJ) found the claimant to be partially disabled by a work-related back injury and psychiatric condition but chose the hypothetical permanent impairment rating assigned by a psychiatrist who stated that he was not at maximum medical improvement (MMI). The Workers' Compensation Board affirmed in all respects, but the Court of Appeals vacated and remanded regarding the permanent impairment rating for the psychiatric condition. We affirm.

The claimant was born in 1972. He completed high school with training in auto mechanics and worked as a roof bolter in the defendant-employer's coal mine. He sustained a work-related back injury on February 7, 2003, when a large slab of rock fell from the roof of the mine and struck him. The claimant continued to work for ten to twelve days with significant back pain, then underwent surgery in May 2003 for herniated discs at two levels and again in September 2003 for recurrent herniations. He received temporary total disability (TTD) benefits from February 14, 2003, through May 9, 2005. His application alleged that he was permanently and totally disabled by the back injury and a resulting psychiatric condition.

Dr. Wagner reported to the employer in June 2004 that x-rays revealed nerve root compression and stenosis. He thought that with physical and aqua therapy the claimant would reach MMI by August 31, 2004, and would retain a 12% permanent impairment rating. He reported in November 2004 that the claimant would have reached MMI in August 2004 even without the recommended therapies.

Dr. Witt began to treat the claimant at the Samaritan Pain Clinic in February 2005 for complaints of back and leg pain. He diagnosed post-laminectomy syndrome,

2

neuropathic pain in the left lower extremity L5-S1 nerve distribution, and lumbar degenerative disc disease. Dr. Witt prescribed various conservative measures and later scheduled a psychological evaluation, which Dr. Etscheidt performed in May 2005.

Dr. Etscheidt noted that the claimant was distressed because he had severe financial pressures, a wife and two children to support, and was "raised to work every day." He suggested a trial of Cymbalta (an antidepressant) and therapy to address depression, anxiety, and sleep disturbances. Based on the evaluation, Dr. Witt prescribed Cymbalta and added depressive disorder and anxiety state to his diagnosis. Later, he also prescribed a Tempur-Pedic mattress to enable the claimant to get restorative sleep, but the employer's carrier denied authorization. Dr. Witt testified subsequently that the mattress had helped many other patients with mechanical back pain and that he had recommended it along with other conservative measures with the hope of avoiding the need for a spinal cord stimulator or fusion surgery. He thought that the claimant could perform work that did not require heavy lifting, was impressed with his high level of motivation, and thought him to be a good candidate for retraining.

Dr. Travis examined the claimant for the employer in April 2005. He assigned a 20% permanent impairment rating for the back condition, stating that there were no objective findings on neurological evaluation but significant symptom magnification. He recommended aggressive work hardening and a cognitive-based physical conditioning program but suspected that the claimant's tendency to magnify his symptoms would prevent him from attempting such a program.

Dr. Templin evaluated the claimant in May 2005 and diagnosed chronic low back pain syndrome, herniated discs at L4-5 and L5-S1, recurrent herniation, and lumbar

radiculopathy. He assigned a 19% permanent impairment rating for the lumbar spine and a 3% rating for pain, for a total of 21%. He assigned numerous work restrictions and stated that the claimant lacked the physical capacity to return to roof bolting.

Dr. Potter evaluated the claimant at his attorney's request in June 2005. He reported that the claimant retained a 29% permanent impairment rating based on the back injury. Dr. Potter assigned extensive restrictions and stated that the claimant could not return to his former job.

Phil Pack, M.S. in clinical psychology and a Licensed Psychological Practitioner, evaluated the claimant in July 2005. His evaluation included a history, mental status examination, psychological and achievement tests, and a medical records review. He noted that the insurance carrier had refused to approve Cymbalta and that the claimant had received no psychological therapy. Testing revealed a high school reading level and no signs of malingering, but it did reveal symptoms of depression and agitation. In Mr. Pack's opinion, the claimant's condition did not result from the arousal of a pre-existing dormant condition and he did not have an active psychological impairment before the back injury. He thought that the injury caused depressive and pain disorders for which recommended counseling. Using Chapter 14 of the AMA Guides to the Evaluation of Permanent Impairment (Guides), Fifth Edition, Table 14-1, he rated the claimant on each of the four areas of functioning and assigned class II impairment, which equates to a 10% permanent impairment rating.

Dr. Ruth, a psychiatrist, evaluated the claimant in October 2005. His evaluation included a history, mental status examination, psychological tests, tests that assessed the effort exerted during the assessment of cognitive functioning, and a medical records

review. Dr. Ruth noted that test results weighed against malingering and were consistent with the complaints of depression, anxiety, chronic pain, and irritability. Any symptom exaggeration appeared to result from a sense of desperation. He noted the claimant's frustration at what he perceived to be illogical and arbitrary decisions by the insurance carrier to refuse to authorize treatment. Dr. Ruth diagnosed major depression due to back and lower extremity pain, an anxiety disorder, and a learning disorder. He stated that the claimant would benefit from a consultation with a psychiatrist, a prescription for an antidepressant, and appointments for medication maintenance for about two years. Cymbalta was among the antidepressants that he suggested. Dr. Ruth found it impossible to assign a permanent psychiatric impairment at that time because the claimant had not been treated for his symptoms and, therefore, had not reached MMI. Although he explained that the Guides did not permit permanent impairment to be assessed until MMI, he assigned what he called a "hypothetical" permanent impairment rating of 10% based on the claimant's present symptoms. He attributed a 6% impairment rating to emotional symptoms and a learning disorder, which were pre-existing, non-work-related factors. He stated that the impairment due to pre-existing conditions would not improve with treatment. He thought that depressed affect, anxiety attacks, and instability due to the injury warranted a 4% impairment rating that would improve by 50% with treatment.

The employer submitted an August 2005 vocational report from Dr. Crystal. It indicated that the claimant was of average intelligence and read at a level sufficient for a skilled trade. He thought that the claimant could perform low-stress, entry-level work that required moderate physical exertion or some types of sedentary bench work. He

5

did not think that the claimant's pain was so severe as to prevent him from concentrating sufficiently to work.

Dr. Weikel's 2005 vocational report indicated that the claimant was afraid to drive while on medication, walked stiffly with a limp, and was trying to wean himself off pain medication. He stated that he could sit for only fifteen minutes or stand for ten minutes and that his condition had improved little since the injury. Dr. Weikel concluded that he sustained a 100% loss of access to the labor market until his pain could be reduced.

The claimant testified that he did not think he had the physical ability to perform any work. He stated that he had difficulty sleeping except for one night when he used a friend's Tempur-Pedic mattress. He required medication to deal with his pain as well as with stress and anxiety. He stated that he could not sit through three or four hours of class a day but would undergo rehabilitation if his pain resolved.

Among the contested issues were extent and duration of disability and the claimant's entitlement to additional TTD based on the psychiatric condition. The employer argued that the claimant was not totally disabled, that the physical injury caused a 20% permanent impairment rating, and that the 4% permanent impairment rating that Dr. Ruth assigned to the psychiatric injury was more persuasive than the 10% rating that Mr. Pack assigned.

The ALJ noted that the claimant appeared to be credible and well-motivated. He had ceased smoking, lost weight, and weaned himself off narcotic pain medication. Nonetheless, he was relatively young, had a high school education, and appeared to be "bright and responsive" at the hearing, all of which indicated an ability to be retrained for more sedentary work. The ALJ determined from the medical evidence that the back

condition warranted a 21% permanent impairment rating. Finding "Dr. Ruth's 4% impairment rating most credible" regarding the psychiatric condition, the ALJ reasoned that Mr. Pack "did not take into account the factors indicating a prior ratable psychiatric condition that were noted by Dr. Ruth." The ALJ determined that the claimant's disability was only partial and awarded income benefits based on a combined values rating of 24%, explaining that there were "some jobs to which [the claimant] could return on a regular and sustained basis, even with his current limitations and pain." Convinced that he could not return to work as a roof bolter, the ALJ awarded a triple benefit under KRS 342.730(1)(c)1 and ordered a rehabilitation assessment.

Among other things, the claimant's petition for reconsideration requested specific findings regarding why the ALJ found him to be at MMI from the psychiatric condition although Dr. Ruth stated that he was not. The ALJ denied the petition, reasoning that MMI regarding the psychiatric claim was not listed as a contested issue. The ALJ noted that Mr. Pack and Dr. Ruth both assigned permanent impairment ratings and that "no such impairment rating could be provided unless each believed plaintiff was at MMI or, at the very least, that plaintiff's impairment rating would not change significantly even after reaching MMI."

The employer asserts that the Court of Appeals invaded the ALJ's province as the finder of fact when it held that the evidence compelled a finding in the claimant's favor regarding the permanent impairment rating that the psychiatric injury caused. In contrast, the claimant argues that the ALJ erred by relying on Dr. Ruth's opinion because Dr. Ruth stated that he was not at MMI. In a cross-appeal, he asserts that he is permanently and totally disabled and that speculation rather than substantial

7

evidence supports the finding that he is "capable of being retrained to other more sedentary occupations." In the alternative, he asserts that because Dr. Ruth found him not to be at MMI regarding the psychiatric condition, he is entitled to TTD benefits until he reaches that point.

The claimant had the burden to prove every element of his claim. As the employer points out, KRS 342.285(1) vests the ALJ with the sole authority to determine the weight and credibility of evidence. Special Fund v. Francis, 708 S.W.2d 641, 643 (Ky. 1986), explains that if a party with the burden of proof fails to convince the finder of fact, the party must show on appeal that the decision was unreasonable and that the evidence compelled a favorable finding.

KRS 342.0011(11)(b) and (c) require a finding of partial or total disability to be supported by a permanent disability rating, which KRS 342.0011(35) and (36) require to be based on a permanent impairment rating "as determined by" the Guides. The Guides, Fifth Edition, page 2, state that impairment is considered to be permanent when an individual reaches MMI, which means that it "is well stabilized and unlikely to change substantially in the next year with or without medical treatment." Page 19 indicates that a permanent impairment rating is not to be assigned until an individual reaches MMI and is no longer expected to improve or deteriorate.

Mr. Pack noted that the employer's insurance carrier refused to approve antidepressant medication and that the claimant had received no therapy for his psychiatric injury. He reported that the injury caused a 10% permanent impairment rating as determined by the Guides. The report was submitted, without objection, and constituted substantial evidence that the psychiatric injury caused a 10% permanent

8

impairment rating.

Testifying on the employer's behalf, Dr. Ruth stated specifically that the claimant was not at MMI because he had received no psychiatric treatment and, therefore, that he could not assign a permanent impairment rating under the Guides. Nonetheless, he assigned a "hypothetical" permanent impairment rating of 10%, attributed a 4% rating to the injury, and expected it to improve by 50% with treatment.

The ALJ did not rely on Mr. Pack's testimony to determine that the claimant had a 10% permanent impairment rating but then exclude a 6% rating based on Dr. Ruth's testimony of a pre-existing impairment. Thus, it is unnecessary to consider if that method would have been proper. The ALJ found Dr. Ruth's hypothetical 4% impairment rating to be "most credible," which was unreasonable when even Dr. Ruth acknowledged that the rating was not determined in accordance with the Guides. Mr. Pack assigned the only permanent impairment rating for the injury that complied with the Guides; therefore, the ALJ erred by failing to rely on it when awarding permanent income benefits.

The ALJ ordered a vocational rehabilitation assessment but also stated that there were "some jobs to which plaintiff could return on a regular and sustained basis, even with his current limitations and pain and, as such, he is not permanently, totally disabled." Although Dr. Potter imposed severe work restrictions, Dr. Travis thought that the claimant could return to work if he alternated between sitting and standing and lifted no more than 50 pounds. Dr. Weikel thought that he was unable to work, but Dr. Crystal thought that he was of average intelligence, could read at the level necessary to perform a skilled trade, and could perform work requiring a moderate level of exertion.

9

He did not think that the claimant's pain had reached a level that interfered with his attention and concentration to the point that he could not work. Under the circumstances, substantial evidence supported the decision to award partial rather than total disability. The claimant's entitlement to permanent income benefits renders moot his argument regarding additional TTD benefits.

The decision of the Court of Appeals is affirmed.

Lambert, C.J., and Cunningham, Minton, Noble, Schroder and Scott, J.J., concur. Abramson, J., not sitting.

COUNSEL FOR APPELLANT,
CZAR COAL CORPORATION:

WALTER W. TURNER
JONES, WALTER, TURNER & SHELTON PLLC
151 NORTH EAGLE CREEK DRIVE
ONE FOUNTAIN PLAZA
SUITE 310
LEXINGTON, KY 40509

COUNSEL FOR APPELLEE,
MARSHALL JARRELL:

THOMAS W. MOAK
MOAK & NUNNERY, PSC
P.O. BOX 510
PRESTONSBURG, KY 41653